The Honorable Clark Hall State Representative
302 Elm Street Marvell, Arkansas 72366-8729
Dear Representative Hall:
I am writing in response to your request for an opinion on whether certain actions of the Mayor of the City of Helena-West Helena are consistent with the state civil service laws. As background for your questions, you state:
 On May 19, 2009, the City of Helena-West Helena passed Ordinance No. 16-2009 establishing the Helena-West Helena Civil Service Commission as set out in Arkansas Code annotated 14-51-202. The Civil Service Commission was appointed and had their first meeting on August 4, 2009.
 On Dec. 30, 2009, by executive order 12-2009 Mayor James Valley declared an emergency and promoted directly, without testing, and increased salaries for twenty-one (21) current employees of the Helena-West Helena police and fire departments.
You have asked in this regard:
 1. Are the actions of bypassing procedures and testing by the Civil Service Commission legal?
 2. What circumstances would be considered an emergency for promotions within the departments? *Page 2 
RESPONSE
Assuming that the Helena-West Helena Civil Service Commission ("Commission") was established in accordance with state law, the answer to your first question is plainly "no." To the extent, however, that there are factual variables impacting the validity of the Commission, I am unable to respond to your first question. In response to your second question, there are two statutory provisions that create exceptions to the civil service testing requirements in emergency situations. These provisions are discussed further below.
Question 1 — Are the actions of bypassing procedures andtesting by the Civil Service Commission legal?
The above background information invites me to assume that the Commission was established in accordance with state law. Assuming that to be the case, then the answer to your first question is plainly "no." The civil service laws governing police and fire departments of cities of the first class, codified at A.C.A. §§ 14-51-101 to-311 (Repl. 1998 and Supp. 2009), clearly contemplate appointment and promotion to department positions being made on the basis of competitive examination.Id. at-301 (Supp. 2009); Bradley v. Bruce,288 Ark. 342, 705 S.W.2d 431 (1986); Op. Att'y Gen. 91-272.
After receiving your request for my opinion in this matter, however, I was informed that there are certain facts outside those stated in your original request that may bear on the validity of the ordinance establishing the Commission. Please be advised that to the extent there are factual variables impacting the validity of the Commission, I am unable to respond to your first question. I cannot evaluate and judge the circumstances surrounding the ordinance's passage. Such matters must be addressed locally, by the city attorney or other local counsel to whom the City usually looks for advice, or through a medium that can consider local factual matters, such as a court.
Question 2 — What circumstances would be considered anemergency for promotions within the departments? In the context of promotions covered by the state civil service laws, my research has disclosed only two provisions that create exceptions to the testing *Page 3 
requirements in emergency situations.[1] Pursuant to A.C.A. § 14-51-301(b)(4)(A)(ii), a person within the department must serve at least one year in his or her position prior to applying for advancement to a higher rank, unless an emergency situation arises, as determined by the board of civil servicecommissioners. Additionally, subsection A.C.A. § 14-51-301(b)(8)(A) (Supp. 2009) provides for the appointment of temporary employees without examination in cases of emergency. However, such temporary employment must be with the consent of the commission and is limited to sixty days, in the absence of grave danger as determined by the commission. Id. at (B).
Neither one of these provisions defines what constitutes an "emergency." This office cannot provide a controlling definition of a term where the legislature has elected not to provide one. Op. Att'y Gen. 2008-116. See also Op. Att'y Gen. 98-025 ("This office has consistently taken the position that in the absence of a legislatively-or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition."). The first rule, however, in determining the meaning of a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common usage.Bob Cole Bail Bonds, Inc. v. Howard,307 Ark. 242, 244, 819 S.W.2d 274 (1991); Bolden v. Watt,290 Ark. 343, 719 S.W.2d 428 (1986). In this regard, the term "emergency" has been defined generally as "a sudden, urgent, usually unexpected occurrence or occasion requiring immediate action." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 636 (2d ed. 2001.
A case-by-case determination will be required in order to determine whether an "emergency" exists for purposes of subsections 14-51-301(b)(4)(A)(ii) and (b)(8)(A).
Because the factual background for your questions includes mention of the Mayor's issuance of an emergency executive order, and it appears that the order *Page 4 
was issued under the belief that the ordinance establishing the Commission is ineffective, I will also attempt to address your second question outside the civil service context. In this regard, as one of my predecessors had occasion to note, there are no statutes or case law specifically addressing a mayor's authority to issue executive orders. Op. Att'y Gen. 95-013. My predecessor nevertheless concluded that a mayor presumably could issue executive orders as a power attendant to his other powers and duties. Id. I agree that as an executive officer, a mayor likely has the power, generally, to issue executive orders. Whether the power has been properly exercised in any given instance, however, is a question that requires reference to the particular matter at hand. I am unable, for the reasons stated above, to state whether the specific executive order you have mentioned was properly issued. I will state generally regarding the existence of an emergency in connection with a mayor's executive order, that in my opinion this decision would likely fall to the mayor as there appears to be nothing limiting the mayor's power in this respect.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Another exception to testing is found in A.C.A. 14-51-307 (Repl. 1998), but this provision does not specify that it applies in an emergency:
 In the case of a vacancy in a position requiring peculiar or exceptional qualifications of a scientific, professional, or expert character, upon satisfactory evidence that competition is impracticable and that the position can best be filled by the selection of some person designated who is of recognized attainment, the board may, by a majority vote, suspend competition in this case. *Page 1